IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AUGUSTO D. MACEDO,                           *

      Plaintiff,                              *

    v.                                          *          Civil Action No. 8:20-3006-PX

MARC ELRICH,                                 *
County Executive
Montgomery County, Maryland                  *

      Defendant.                              *
                        ***

## MEMORANDUM OPINION

      Pending in this employment discrimination case is Defendant Montgomery County Executive Marc Elrich ("Elrich" or "Defendant")'s motion to dismiss.  ECF No. 7.  The motion is fully briefed, and no hearing is necessary.  *See* D. Md. Loc. R. 105.6.  For the following reasons, the Court GRANTS in part and DENIES in part the motion.

I.     **Background**[1]

      In 2016, Plaintiff Augusto D. Macedo applied to become a police officer with the Montgomery County Police Department ("MCPD").  A 53-year-old black male, Macedo had enjoyed a long career as a practicing attorney before deciding to switch professions.  ECF No. 1 ¶¶ 2, 3.  After submitting his application to become a police officer, Macedo was invited to participate in MCPD's three-part interview process, which included a physical fitness assessment, a written examination, and an oral interview.  ECF No. 1 ¶ 15.  Macedo passed the

---

[1] The following facts averred in the Complaint are taken as true and construed most favorably to Macedo. *See Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.") (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)).  The exhibits attached to the Complaint are incorporated by reference. Fed. R. Civ. P. 10(c); s*ee also Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 830 (D. Md. 2013).

physical fitness assessment and scored 88% out of 100% on the written exam.  ECF No. 1 ¶¶ 16, 17.

On August 27, 2016, Macedo reported to MCPD headquarters for his oral interview.  A white female officer greeted him.  ECF No. 1 ¶ 18.  The interview panel consisted of the female officer and two male officers, one white and one black.  ECF No. 1 ¶ 20; ECF No. 1-5 at 2. Before the interview began, Macedo extended his hand to the white male officer who, in Macedo's view, rudely hesitated before reluctantly shaking his hand in return.  ECF No. 1-5 at 2. The female officer next explained that the interview panel would take notes of Macedo's responses.  *Id*.  Macedo later learned that interview panel wrote his age, 53, at the top of their rating sheets for him but not for any other candidate.  ECF No. 1-3 at 3.

Not five minutes after Macedo's interview ended, the female officer informed Macedo that although he was "qualified," he was not "well qualified" to "move on to the 'next stage'" because he "failed" the oral interview component.  ECF No. 1 ¶ 22; ECF No.1-5 at 4.  A different officer on the interview panel conveyed that Macedo could reapply for the position in six months.  ECF No. 1-5 at 4.

On December 23, 2016, Macedo complained about his non-selection in writing to the United States Equal Employment Opportunity Commission ("the EEOC"), which he cross-filed with the Montgomery County Office of Human Rights.[2]  ECF No. 1-5.  This complaint included a detailed narrative of Macedo's application and interview experience.  *Id.*  Macedo noted his

---

[2] In their respective pleadings, both parties refer to this agency as the "Maryland Commission on Human Relations."  But ECF No. 1-5 reflects that Macedo actually mailed his discrimination charge to the Montgomery County Office of Human Rights ("MCOHR").  *See* ECF No. 1-5; *see also* Montgomery County Office of Human Rights Homepage, https://www.montgomerycountymd.gov/humanrights/ (last visited Sept. 10, 2021).  The MCOHR is a local affiliate of the Maryland Commission on Civil Rights, which was previously known as the Maryland Commission on Human Relations.  *See* State of Maryland Commission on Civil Rights, Our Partners, https://mccr maryland.gov/Pages/Our-Partners.aspx (last visited Sept. 10, 2021); *see also Niner v. Garret Cnty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *4 n.5 (D. Md. Aug. 15, 2018) (explaining that the Maryland General Assembly re-named the commission during the 2011 legislative session).

race and age, the race and gender of the interviewers, and statistical information comparing the racial composition of Montgomery County to the composition of the applicant pool for the MCPD officer position. *Id.* at 2, 4. Under the subheading "claim," Macedo wrote that he is "an African-American male, 54-years [sic], highly educated, with a storied educational and work career" who is "both mentally and physically fit," and who had passed two "objective tests" but was summarily rejected after a "subjective" in-person interview. *Id.* at 4–5. As Macedo put it, he fell victim to a "selection process [that] was unfair, unjust, and clearly illegally discriminatory as [he is] over the age of 40 and a member of the non-white class." *Id.* at 5.

A few months later, the EEOC responded to Macedo, construing his claim as brought pursuant to Title VII of the Civil Rights Act of 1964. ECF No. 1-2 at 2. The EEOC requested that Macedo review the enclosed draft formal charge, known as the "EEOC Form 5," and make corrections, sign, date, and return it to the agency. *Id.* The EEOC Form 5 noted expressly that Macedo was pursuing a "race" discrimination claim. *Id.* at 4. Not only was the "race" box on the EEOC Form 5 checked, the typed narrative also briefly described Macedo's oral interview experience, including MCPD's on-the-spot determination that Macedo was "not well-qualified" to advance to the next phase of the employment process despite his good performance on objective measurements. *Id.* at 4. The typed narrative summed up Macedo's contention that he "believe[d] he was not hired due to [his] race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*

On the EEOC Form 5, Macedo appears to have made handwritten edits before returning it to the EEOC. He corrected his middle initial (striking "G" and replacing it with the letter "D") and his birth year (replacing "1963" with "1962"). ECF No. 1-2 at 4. Macedo also checked the box on the form to indicate he was pursuing an age discrimination claim, but he left the "race"

3

box unchanged.  *Id.*  In the narrative section, the words "race (Black)" were crossed out and the words "Age 53" were written instead.  *Id.*

The EEOC opened an investigation into Macedo's allegations and ultimately issued a written determination, concluding that reasonable cause existed to believe MCPD discriminated against Macedo on the basis of age and in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").  ECF No. 1-3 at 3–4.  As grounds for its decision, the EEOC explained that the interview scoring sheets made special note of Macedo's age, and that the successful applicants were "significantly younger" than Macedo and had "little to no experience."  *Id.* at 3.  Further, MCPD failed to "provide a valid explanation as to why" Macedo was not selected.  *Id.*  Left out of the EEOC determination, however, was any mention of the EEOC having investigated Macedo's race claim.  *See id.* at 3–4.

The EEOC invited the County to engage in conciliation to voluntarily "eliminate [its] alleged unlawful practices."  ECF No. 1-3 at 4.  Evidently those efforts failed.  *Id.* at 1.  On August 5, 2020, the EEOC issued a right to sue letter to Macedo.  *Id.* at 2.  Macedo filed suit in this Court on October 16, 2020, alleging that MCPD discriminated against him on account of his race, in violation of Title VII and 42 U.S.C. § 1981, and on account of his age, in violation of the ADEA.  The Complaint also includes companion state and local antidiscrimination claims brought pursuant to the Maryland Fair Employment Practices Act ("MFEPA") and the Montgomery County Human Rights Act ("MCHRA").  ECF No. 1; *see also* 42 U.S.C. § 2000e-2; 29 U.S.C. § 623(a); Md. Code Ann., State Gov't § 20-101 et seq.; Md. Code Ann., State Gov't § 20-1202.

Defendant now moves to dismiss the Title VII and ADEA claims, arguing that Elrich, as County Executive, cannot be considered an "employer" capable of being sued under either

4

statute.  Elrich also maintains that both causes of action, and the related § 1981 claim, fail as a matter of law, and alternatively that the Title VII claim must be dismissed for lack of exhaustion. Lastly, Defendant urges dismissal of the state and local claims as time-barred.  The Court considers each argument below.

## II.     Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' however, 'rather than a blanket assertion, of entitlement to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him.  *Twombly*, 550 U.S. at 555.  The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity."  *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted).  However, "[f]actual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.  "[C]onclusory statements

or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Macedo proceeds pro se, but he is also an experienced attorney. *See* ECF No. 1-5 at 2–3. Although generally pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), Macedo will be not be afforded the same special solicitude accorded self-represented litigants who lack formal legal training. *See DiPrete v. 950 Fairview St., LLC,* No. 15-00034, 2016 WL 6137000, at *4 n.4 (W.D. Va. Oct. 21, 2016), *appeal dismissed*, No. 16-2335, 2017 WL 2241808 (4th Cir. May 22, 2017) (finding that because pro se plaintiff is an attorney no "special consideration or leniency is warranted" and collecting cases); *see also Gordon v. Gutierrez*, No. 1:06-861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member of a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants.").

## III.    Analysis

### A.    County Executive Elrich as Defendant

Defendant first contends that the Title VII and ADEA claims must be dismissed because Elrich, as the sole Defendant, does not meet the statutory definition of "employer." ECF No. 7 at 5, 8. Elrich rightly points out that both statutes prohibit an "employer" from engaging in workplace discrimination. 42 U.S.C. § 2000e-2(a)(1)–(2); 29 U.S.C. § 623 (a)(1)–(3). Title VII defines an employer as a "person" engaged in an industry affecting commerce who has fifteen or

more employees," and further defines "person" to include "governments [and] governmental agencies." 42 U.S.C. § 2000e(a), (b). Similarly, the ADEA includes as an "employer" "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). The County thus contends that because Elrich does not meet either definition of "employer," the claims must be dismissed.

The Court disagrees. To begin, Macedo has sued the County Executive in his official, not individual, capacity.[3] ECF No. 1 ¶ 3 ("[MCPD] is an instrumentality of Defendant Montgomery County . . . [and] County Executive Elrich is sued *in his official capacity*.") (emphasis added). As the official head of the County, Elrich can certainly be named in a suit brought against the County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see, e.g.*, *City of Columbus v. Trump*, 453 F. Supp. 3d 770 (D. Md. 2020); *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214 (D. Md. 2020); *Toney v. Cuomo*, 92 F. Supp. 2d 1186 (D. Kan. 2000).

Further, the County—and by extension County Executive Erlich—is the proper party to be sued as Macedo's putative "employer" under Title VII and the ADEA. Although the Complaint maintains that MCPD failed to select Macedo on account of his race and age, MCPD is an agent of the County, not a distinct legal entity capable of being sued. *LaPier v. Prince George's Cnty., Md*., No. 10–2851 AW, 2011 WL 4501372, at *3 (D. Md. Sept. 27, 2011) (citing

---

[3] The County's reliance on *Lynch v. Potter* is misplaced. In *Lynch*, the district court dismissed claims against three postal employees who had been sued in their individual capacities. *See Lynch v. Potter*, No. 3:05-0871, 2006 WL 8439180, at *3–4 (S.D. W. Va. Dec. 5, 2006) ("The actions taken by [the postal employees] as employees of the USPS do not subject them to *personal liability*. The claims against the *individual Defendants* under the ADEA are dismissed.") (emphasis added).

cases); *see also Hines v. French*, 157 Md. App. 536, 573 (2004); *Fields v. Montgomery Cnty.*, DKC-13-3477, 2014 WL 4231164, at *2 (D. Md. Aug. 26, 2014).[4]  Rather, the County remains the government entity properly construed as the "employer" for purposes of Title VII and the ADEA.  And suit against Elrich in his official capacity as County Executive remains a permissible way to proceed against the County.

The Court next turns to the County's specific challenges to the Title VII claim.

### B.    Title VII Claim

### i.    Exhaustion of Administrative Remedies

Elrich maintains that Macedo's failure to exhaust administrative remedies requires dismissal of the Title VII claim.  ECF No. 7 at 8.  As a precondition to suit in federal court, a plaintiff must first file a formal charge with the EEOC.  *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019).  Although not jurisdictional, exhaustion remains an essential and mandatory claim-processing rule, *id.* at 1851, as it is designed to put the employer on notice of alleged wrongdoing "so that the matter can be resolved out of court if possible."  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (citing *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981)).  Such notice is afforded the employer when the formal EEOC charge is "reasonably related" to the claims pursued in federal court.  *Id.* at 1186–87 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000)).  "At the same time, however, lawyers do not typically complete the administrative charges, and so courts [must] construe them liberally."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir.1988)).

---

[4] Federal Rule of Civil Procedure 17(b)(3) provides that the capacity for an entity to sue or be sued is established by the law of the state where the Court is located.  Fed. R. Civ. P. 17(b)(3).

Elrich argues that Macedo has not exhausted his Title VII claim because the formal EEOC charge "completely omitted any basis or mention of race discrimination in the description section, and then affirmatively crossed out 'race (Black)' as the basis for his failure to hire and instead wrote in 'Age 53.'"  ECF No. 7 at 10.  In making this argument, however, Defendant discounts that the EEOC Form 5 itself noted Macedo was pursuing a "race" claim brought pursuant to Title VII.  ECF No. 1-2.  Defendant also ignored Macedo's initial written complaint, which detailed his race-based claim for the EEOC and the County.  ECF No. 1-5 at 5 (arguing he had not been selected because he is "over the age of 40 *and a member of the non-white class*.") (emphasis added).  Under these circumstances, the EEOC Form 5 is sufficiently related to the Title VII claim such that Defendant receive adequate pre-suit notice.  *Cf. Cuffee v. Verizon Commc'ns, Inc.*, 755 F. Supp. 2d 672, 680 (D. Md. 2010) (mere checking of box insufficient to preserve claim); *Bryant v. Bell Atl. Maryland*, 288 F.3d 124, 132–33 (4th Cir. 2002).

The County emphasizes that Macedo struck through the typed phrase "race (Black)" in the narrative and wrote in its place, "Age 53" on the EEOC Form 5 itself.  *See* ECF No. 1-2 at 4. These edits, suggests the County, effectively excise the race claims from the EEOC formal charge.  But this cramped reading of the EEOC Form 5 cannot be squared with Macedo having left untouched the portion of the charge that expressly noted he was pursuing a "race" discrimination claim or the express reference to the claim as brought pursuant to "Title VII of the Civil Rights Act of 1964."  *Id.*  Nor can the County cry foul considering it received Macedo's robust written complaint that had provided ample notice of the Title VII claim.  *Cf. Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (where employer never received initial correspondence to the EEOC, notice insufficient to construe the charge as preserved).  Thus, strikeouts notwithstanding, the race-based claim is exhausted.

### ii.  Merits of the Title VII Claim

Elrich next urges dismissal of the Title VII claim because no Complaint facts make plausible that Macedo was rejected for the position of police officer on account of his race.  In a non-selection challenge, the plaintiff must plausibly aver that he (1) is a member of a protected class; (2) who applied for a position; (3) he was qualified for the position; and (4) was rejected for the position "under circumstances giving rise to an inference of unlawful discrimination." *Hamilton v. Harker*, No. TDC-19-1489, 2021 WL 597684, at *8 (D. Md. Feb. 16, 2021) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)).  When viewing the Complaint facts as true and most favorably to Macedo, the claim withstands challenge.

First, Macedo, a black male, is a member of a protected class.  Second, he appears qualified for the police officer position, receiving high marks on the written examination and completing MCPD's rigorous physical fitness test.  ECF No. 1 at 5.  Third and most critically, the peculiar circumstances surrounding the oral interview that Macedo purportedly had "failed," plausibly gives rise to the inference that he was not selected on account of his race.  Once the interview panel *saw* Macedo, his candidacy ended abruptly.  *Id.* at 4.  The panel informed him just five minutes after the interview concluded, without any time for reflection, deliberation, or comparison to other candidates, that he "failed" the oral exam.  *Id.*  Macedo was given no rational explanation, or any explanation for that matter, what was meant by "failing" the interview, or why he was "qualified" but not sufficiently "well qualified" for the position.  Last, the Complaint avers that others outside the protected class were selected for the position even though they performed less well in the application process.  ECF No. 1 ¶ 23; *see also Langerman v. Thompson,* 155 F. Supp. 2d 490, 495 (D. Md. 2001).  When viewing these facts most favorably to Macedo, the Complaint makes plausible that he had not been selected on account of

his race.  *See Pugh v. Montgomery Cnty. Bd. of Educ.*, No. DKC-13-2862, 2015 WL 3457124, at
*5 (D. Md. 2015).  The Court accordingly denies the County's motion to dismiss Macedo's Title
VII claim.[5]

### C.       Section 1981 Claim

As to the companion race discrimination claim brought pursuant to 42 U.S.C § 1981, the
applicable law compels a different result.  Although the elements of a Section 1981 claim largely
mirror a Title VII action, when brought against a municipality, the plaintiff must also make
plausible that the discriminatory acts or omissions arose from an official pattern, practice, policy
or custom.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)*; see also Dennis v.
Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) ("[T]he § 1983 requirement that plaintiffs
show an official policy or custom of discrimination also controls in § 1981 actions against state
entities.").  Macedo brings his § 1981 claim based on MCPD's rejection of his candidacy, yet no
facts support that the alleged discrimination arose from any such official pattern, practice, policy,
or custom.  Specific allegations regarding his own non-selection, without more, do not support
the existence of such a policy or custom.  *See Hawkins v. Leggett*, 955 F. Supp. 2d 474, 494 (D.
Md. 2013); *see also Windsor v. Bd. of Educ. of Prince George's Cnty.*, No. TDC-14-2287, 2016
WL 4939294, at *12 (D. Md. 2016).  Thus, the § 1981 claim must be dismissed, albeit without
prejudice.  Should discovery unearth facts supporting that Macedo's non-selection was the
product of a racially discriminatory pattern, practice, policy, or custom, he may seek leave to
amend the Complaint.

---

[5] The ADEA claim survives for the same reasons as the Title VII claim.  Like its Title VII counterpart, the
ADEA prohibits adverse employment action, such as non-selection, on account of age.  *See* 29 U.S.C. § 623(a)(1).
At 53 years old, Macedo belongs to the class of persons protected under the ADEA, and he otherwise appeared
qualified for the position.  Notably, each member of Macedo's interview panel specifically wrote down his age on
their interview sheets but did not make any similar notation for other applicants.  Ultimately, the successful
candidates were younger than Macedo.  *See* ECF No. 1-3 at 3.  When viewing the Complaint facts most favorably to
Macedo, the ADEA claim cannot be dismissed.

### D.       MFEPA and MCHRA Claims

The County lastly argues that the MFEPA and MCHRA claims are time-barred.  Macedo offers no response, which itself suggests that he has conceded the point.  *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010).  And for good reason.  Under Maryland law, MFEPA and MCHRA claims must be brought within two years of the alleged unlawful employment practice.  *See* Md. Code Ann., State Gov't § 20-1013; Md. Code Ann., State Gov't § 20-1202(c)(1).[6]  This is true even when the putative plaintiff is already pursuing his claims through state and federal administrative processes.  *See Melendez v. Bd. of Educ. for Montgomery Cnty.*, No. DKC 14-3636, 2015 WL 3540947, at *10 (D. Md. June 3, 2015) (citing *McCleary-Evans v. Md. Dep't of Transp.*, No. ELH-12-1550, 2015 WL 1285325, at *22–23 (D. Md. Mar. 20, 2015)).

The Complaint makes plain that the "alleged unlawful employment practice," Macedo's non-selection, occurred on August 27, 2016.  Macedo did not file suit until October 16, 2020, well beyond the two-year limitations window.  Although this limitations rule puts plaintiffs who are simultaneously pursuing administrative and judicial remedies "in an unenviable position," the applicable statute "affords no other possible interpretation."  *German v. Akal Sec., Inc.*, No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011).  The Court, therefore, dismisses Macedo's state and local statutory claims as untimely.  Further, because Macedo has robustly pleaded the claims, and no facts suggest that Macedo could cure this defect, the claims will be dismissed with prejudice.

---

[6] The Court applies the state statute of limitations to these claims.  *See Membreno v. Atlanta Restaurant Partners*, LLC, 517 F. Supp. 3d 425 (D. Md. 2021) (citing *McCray v. Maryland Dep't of Transp.*, No. ELH-11-3732, 2014 WL 4660793, at *14 (D. Md. Sept. 16, 2014)).

IV.     **Conclusion**

In sum, the Court finds that Macedo has filed suit against County Executive Elrich in his official capacity so as to proceed against the County, which is the "employer" for purposes of Title VII and the ADEA.  The Title VII claim also survives dismissal as administratively exhausted, and both the race and age non-selection claims are sufficiently pleaded.  The § 1981 claim, however, must be dismissed for failure to make plausible that Macedo's termination stemmed from a racially discriminatory pattern, practice, policy, or custom.  Lastly, the MFEPA and MCHRA claims must be dismissed with prejudice as time-barred.  The motion to dismiss is, thus, GRANTED in part and DENIED in part.

A separate Order follows.


9/24/2021                                            _____/s/_____
Date                                                    Paula Xinis
                                                        United States District Judge

13