**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| AUGUSTO D. MACEDO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARC ELRICH | | |
| COUNTY EXECUTIVE | | |
| MONTGOMERY COUNTY, MD, | ) | Civil Case No. GLS 20-3006 |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the Court is "Defendant's Motion for Summary Judgment," (ECF No. 58) ("Motion"), filed by Defendant Marc Elrich, County Executive for Montgomery County, Maryland ("Defendant"). The matter is fully briefed, *see* ECF Nos. 61, 62, so no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021).

For the reasons set forth below, the Motion is **GRANTED**.

## I.    BACKGROUND

### A.  Procedural Background

On October 16, 2020, Plaintiff Augusto Macedo ("Plaintiff") filed his Complaint in this Court. (ECF No. 1). In his Complaint, Plaintiff asserts the following: Count I: age discrimination, in violation of 29 U.S.C. § 621, *et. seq.* ("ADEA"); Count II: race discrimination, in violation of 42 U.S.C. § 2000e, *et. seq.* ("Title VII") and 42 U.S.C. § 1981; and Count III: race discrimination, in violation of Maryland Fair Employment Practices Act ("FEPA") and Montgomery County Human Rights Act ("MCHRA"). On November 4, 2020, the Defendant filed a motion to dismiss.

(ECF No. 7). On September 24, 2021, after full briefing, Judge Paula Xinis denied in part, granted in part the motion to dismiss. (ECF Nos. 10, 11). Specifically, Judge Xinis dismissed Count II, insofar as it pertained to the 42 U.S.C. § 1981 claim and Count III in its entirety. Thus, Count I (ADEA claim) and Count II (Title VII claim) remain live. On October 17, 2021, the Defendant filed an Answer to the remaining Counts. (ECF No. 13).

On October 18, 2021, Judge Xinis referred this case to the undersigned for all further proceedings. (ECF No. 18). The parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 20, 21). Thereafter the parties filed several motions to extend the Scheduling Order deadlines, which were granted. (*See*, *e.g.*, 29-30, 39-42). On August 19, 2022, the Defendant filed "Defendant's Notice of Intent to File a Motion for Summary Judgment." (ECF No. 48). On August 26, 2022, Plaintiff filed a response thereto. (ECF No. 51). The Court set the summary judgment briefing schedule. (ECF No. 55). On October 25, 2022, Defendant filed the Motion, which Plaintiff opposes. (ECF No. 58; ECF No. 61, "Opposition"). Defendant filed a reply brief on December 9, 2022. (ECF No. 62, "Reply").[1]

### B. Factual Background[2]

1. *Montgomery County Police Department*

To become a police officer in the Montgomery County Police Department ("MCPD"), one must submit an application through Montgomery County's online system. (Affidavit of Deborah Langford, Deputy Director of Personnel, "Langford Affidavit," ¶ 6, J.A. 0001). A recruiter from MCPD's personnel division reviews the application and verifies that the applicant meets the

---

[1] The parties submitted a Joint Appendix. (ECF No. 66) ("J.A."). Defendant's submissions can be found in this range: 0001-0025. Plaintiff's submissions can be found in this range: 0026-0163. The Court will refer to the documents as, e.g., J.A. 0001. In addition, pursuant to this Court's January 18, 2023 Order (ECF No. 68), the following portions of the J.A. are sealed: 0006-0017, 0072-0084.

[2] The Court views all evidence in the light most favorable to Plaintiff, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"minimum qualifications." (Langford Affidavit, ¶ 6, J.A. 0001). If an applicant meets the minimum qualifications, MCPD schedules a physical assessment test, written examination, and oral interview. (Langford Affidavit, ¶ 6, J.A. 0001-0002).

A three-person panel conducts the oral interview. (Langford Affidavit, ¶ 7, J.A. 0002). The three panelists are not given information on the applicant prior to the interview. (Langford Affidavit, ¶ 7, J.A. 0002). During the interview, the panelists ask the applicant six-standardized questions. (Langford Affidavit, ¶ 7, J.A. 0002). The questions require the applicant to describe past work or education experience, problem solve, and answer how he/she would react in different scenarios. (*See* "Interview Questions for Police Officer Candidate" sheet, J.A. 0006). Each individual panelist is required to score the applicant based on his/her responses to the questions. (Langford Affidavit, ¶ 7, J.A. 0002). Then, the panelists discuss the candidate and are to agree on a "consensus score," which is an assessment of how the applicant performed during the interview. (Langford Affidavit, ¶ 7, J.A. 0002). If the consensus score is higher than 18, the applicant is deemed "well qualified" and advances to the next stage of the hiring process. (Langford Affidavit, ¶ 7, J.A. 0002; *see also* Police Officer Candidate Structured Interview Consensus Rating Form, "Consensus Rating Form," J.A. 0016). If the consensus score is 17 or below, the applicant is deemed "qualified" and does not advance to the next stage. (Langford Affidavit, ¶ 7, J.A. 0002; Consensus Rating Form, J.A. 0016). If an applicant is deemed "well qualified," he/she must pass a background check, polygraph examination, medical examination, and psychological examination before receiving a final offer of employment. (Langford Affidavit, ¶ 8, J.A. 0002-0003).

In 2016, of the individuals that advanced beyond the physical assessment test, the written examination, and the oral interview, 23.49% were African American. (Langford Affidavit, ¶ 11. J.A. 0004).

2. *Plaintiff Augusto D. Macedo*

Plaintiff is an African-American male who was 53 years old in 2016. In June 2016, Plaintiff, who is an attorney, decided that he wanted to begin a career as a police officer at MCPD. (Deposition of Augusto Macedo, "Macedo Dep.," 24:10-17, J.A. 0071).

On June 3, 2016, Plaintiff sent an email to MCPD recruiters, including Officer Ana Hester and Officer Lisa Engestrom, and asked when MCPD planned on accepting police officer applications. (J.A. 0051). Plaintiff did not receive a response to his email. (*Id.*). On June 9, 2016, Plaintiff sent another email in which he informed Officer Hester that he learned how to submit an application despite her "non-response." (*Id.*). On the same day, Officer Hester and Officer Engestrom, sent emails to one another in which they called Plaintiff a "jerk" and said that Plaintiff is "not a nice guy." (*Id.*).

After submitting his application, on June 30, 2016, MCPD informed Plaintiff that he was selected to advance to the physical assessment test, written examination, and oral interview. (Macedo Dep. 26:16-27:7, J.A. 0072). On July 11, 2016, Plaintiff passed the physical assessment test. (Macedo Dep. 26:25-27:2, J.A. 0072). On August 27, 2016, Plaintiff passed the written examination with a score of 88%. (Macedo Dep. 130:10-14, J.A. 0098). On the same day, Plaintiff had his oral interview. (Macedo Dep. 27:6-8, J.A. 0072). The following three individuals were on the panel who interviewed Plaintiff: (1) Claude Onley, Jr., a 47-year-old, African American male; (2) Elizabeth Holt, a 56-year-old, white female; and (3) Stephen O'Malley, a 33-year-old, white male. (*See* Affidavit of Claude Onley, Jr., J.A. 0017-0019; Affidavit of Elizabeth Holt, J.A. 0020-0022; Affidavit of Stephen O'Malley, J.A. 0023-0025).

When Plaintiff arrived at the interview, he entered the room where the panelists were located. Upon Plaintiff entering the room, Mr. O'Malley's facial expression "went from civility to

instant incivility" and he frowned. (Macedo Dep. 67:18-68:6, J.A. 0082). Then, Plaintiff politely attempted to shake Mr. O'Malley's hand, but Mr. O'Malley was visibly reluctant to accept Plaintiff's handshake offer and only did so "begrudgingly." (Macedo Dep. 62:16-63:8, J.A. 0081). Mr. O'Malley quickly withdrew his hand after the handshake. (Macedo Dep. 63:3-21, J.A. 0081). In contrast, through his words and conduct, Mr. Onley was warm and welcoming. (Macedo Dep. 69:5-9, J.A. 0083). Ms. Holt, although cordial, merely "appeared" to be nice. (Macedo Dep. 69:18-70:5, J.A. 0083).

Once the interview began, Ms. Holt asked Plaintiff questions from the "Interview Questions for Police Officer Candidate" sheet. (Macedo Dep. 69:18-23, J.A. 0083). During the interview, specifically when Plaintiff mentioned police misconduct related to the policing of the African American community, Mr. O'Malley frowned at Plaintiff and his face turned red. (Macedo Dep. 72:21-74:14, J.A. 0083-0084). Also, Ms. Holt and Mr. O'Malley took very few notes during the interview. (Macedo Dep. 105:15-21, J.A. 0092). However, after Plaintiff provided his age, all three panelists wrote down Plaintiff's age in their "Police Officer Candidate Answer Sheets" ("Interview Sheets"). (*See* Interview Sheets, J.A. 0062-0064; Macedo Dep. 31:17-33:2, J.A. 0073-0074).

After the interview, the individual panelists gave Plaintiff the following scores: Mr. Onley: (14); Ms. Holt: (16); and Mr. O'Malley (12). (J.A. 0007-0012). Thereafter, the panel agreed on a "consensus score" of 15. (Consensus Rating Form, J.A. 0016). Thus, Plaintiff was not deemed "well-qualified" and did not advance to the next stage of the employment process.

## II.    STANDARD OF REVIEW—SUMMARY JUDGMENT

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits.  *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions.  *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A "mere scintilla" of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.   ANALYSIS

The Defendant argues that summary judgment is appropriate for the following reasons: (1) the Plaintiff fails to establish direct or indirect evidence of discrimination; (2) Plaintiff also fails to establish a prima facie case of either race or age discrimination; and (3) even if the Plaintiff can establish a prima facie case of race or age discrimination, Plaintiff fails to offer facts from which

an inference can be drawn that the Defendant lacked a legitimate, nondiscriminatory reason for declining to hire the Plaintiff (i.e., the reason offered was pretextual). (Motion, pp. 8-9). In response, the Plaintiff first argues that, on the age discrimination claim, he has proffered direct evidence of Defendant's "age discriminatory animus." Next, Plaintiff asserts that the evidence establishes a prima facie case for both race discrimination and age discrimination. (Opposition, pp. 6-10). The Court will address each argument.

A.    **Title VII: Race Discrimination**

Title VII prohibits employers from "discriminat[ing] against any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff's claim is that he was well qualified for employment, yet MCPD failed to hire him under circumstances that give rise to an inference that the non-hiring decision was due to racial discrimination. In such a circumstance, Plaintiff bears the burden of proving this claim by a preponderance of the evidence. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Typically, a plaintiff may prove intentional discrimination in one of two ways. First, by offering "'direct or indirect' evidence of discrimination under ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal citation omitted), *cert. denied*, 520 U.S. 1116 (1997). "Direct evidence" of discrimination must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc).

If a plaintiff does not establish direct or circumstantial evidence of discrimination, a plaintiff can show a Title VII violation by utilizing the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Title VII failure to hire claim based

on racial discrimination).[3]  Under the so-called "*McDonnell Douglas*" framework, a plaintiff bears the initial responsibility of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802; *see also Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) ("Under that [*McDonnell Douglas*] three-step framework, the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence).

In the failure-to-hire context, a plaintiff must show, by a preponderance of the evidence, that: (1) he belonged to a protected class; (2) he applied for a position; (3) he was qualified for that position; and (4) his application was rejected under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If a plaintiff establishes a prima facie case, "the burden then shifts to the employer to 'produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Daniel v. Morgan State Univ.*, 426 F. Supp. 3d 135, 144 (D. Md. 2019) (citing *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001) (quoting *Burdine*, 450 U.S. at 254)). Once the defendant produces a legitimate, non-discriminatory reason, the plaintiff must show, by a preponderance of the evidence, that the legitimate reason was a pretext for discrimination. *Adams v. Trustees of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558-59 (4th Cir. 2011).

In this case, the Defendant asserts that Plaintiff fails to establish a prima facie case of race discrimination because Plaintiff did not establish the third and fourth elements of the legal standard for a failure-to-hire claim, which is set forth in *Anderson*. Specifically, Defendant contends that the Plaintiff fails to show that he was qualified for the police officer position and that his

---

[3] If a plaintiff presents direct evidence of discrimination, then the "McDonnell Douglas" framework does not apply. *Trans World Airlines, Inc. v. Thurston*, 469 U.S 111, 121 (1985).

application was rejected under circumstances that give rise to an inference of unlawful discrimination. In support of this argument, Defendant cites to the fact that Plaintiff failed to achieve a "well-qualified" oral interview score of 18 or more. Next, Defendant contends that because 23.49% of applicants that advanced beyond the oral interview stage were African American, Defendant's rejection of Plaintiff's application does not give rise to an inference of unlawful discrimination. (Motion, pp. 8-9).

Plaintiff counters that he had all the qualifications necessary for the position and his application was only rejected due to the discriminatory interview process. Moreover, Plaintiff argues that the panelists, particularly Mr. O'Malley, demonstrated an "animus" toward him during the interview, which gives rise to an inference of unlawful discrimination. (Opposition, pp. 7-9).

### i.  Job Qualifications

As a preliminary matter, the Court has reviewed the entire Joint Appendix. (ECF No. 66). None of the materials therein deal with the qualifications that the Plaintiff needs in order to become a police officer. (J.A. 0001-0163). Accordingly, there are no facts that the Court can construe in the light most favorable to the Plaintiff, the non-moving party, on this issue. On this fact alone, the Court could grant summary judgment in favor of the Defendant as the Plaintiff fails to establish the third element required by *Anderson*. 406 F.3d at 268.

However, despite this fact, in its Reply, the Defendant seems to concede that Plaintiff possessed the requisite qualifications necessary to reach the interview stage. Defendant's sole argument, then, is that Plaintiff was not qualified to be *hired* because Plaintiff failed the interview and, as a result, did not complete the additional steps (background check, polygraph examination, medical examination, and psychological examination) necessary to receive an offer of employment. (Reply, p. 6).

The Court finds Defendant's argument unavailing. First, the law provides that Plaintiff could make a prima facie showing that he was qualified for the police officer position so long as he demonstrates that he met the "minimum objective criteria" for the position. *Wesley v. Arlington Cnty.*, 354 F. App'x 775, 779 (4th Cir. 2009). The Plaintiff need not show, however, that he is subjectively qualified. Put another way, Plaintiff does not need to show that his interview performance, which is measured by the panelists' subjective scores, was scored high enough to advance to the next stage of the hiring process. *Id.*; *see also Lynn v. Regent of Univ. of Cal.*, 656 F.2d 1337, 1344 (9th Cir. 1981) ("Objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process"); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 135 (7th Cir. 1985) ("The circuits that have removed subjective qualifications from the prima facie phase of analysis require a showing of only the minimum objective qualifications"). Here, Defendant acknowledges that Plaintiff passed the physical assessment and the written examination, and MCPD's recruitment division verified that Plaintiff had the minimum qualifications for the position. (Motion, p. 4). Accordingly, when viewing the facts in the light most favorable to Plaintiff, Plaintiff demonstrated that he met the minimum objective criteria necessary for the position and he made a prima facie showing that he was qualified for the police officer position.

## ii.   Inference of Unlawful Discrimination

As to the fourth element under *Anderson*, whether the Defendant's decision not to hire Plaintiff occurred under circumstances that give rise to an inference of racial discrimination, the Plaintiff relies on several facts from the record, which he believes establish a prima facie case. Specifically, Plaintiff relies upon the following evidence: (1) MCPD recruitment personnel (Officers Hester and Engestrom) referred to Plaintiff as a "jerk" in an email exchange; (2) prior to

the interview, Mr. O'Malley frowned upon seeing Plaintiff enter the room; (3) Mr. O'Malley was visibly reluctant to shake Plaintiff's hand; (4) Mr. O'Malley frowned during the  interview and turned red in the face when Plaintiff mentioned police misconduct related to the policing of the African-American community; and (5) Ms. Holt and Mr. O'Malley took very few notes during Plaintiff's interview. (J.A. 0051; Macedo Dep. 62:16-63:8, J.A. 0081; Macedo Dep. 67:18-68:6, J.A. 0082; Macedo Dep. 69:18-70:5, J.A. 0083).[4]

Defendant argues that the above facts are insufficient to establish a prima facie case because: (1) labeling someone as a "jerk" is not discriminatory, and Plaintiff fails to provide evidence that the recruitment personnel participated in or influenced the outcome of Plaintiff's interview; and (2) Plaintiff "failed to explain how one's notetaking abilities or alleged disliking of handshaking is evidence of discrimination." (Reply, pp. 7-8, 10). Next, according to the Defendant, the J.A. contains data that reflects that 23.49% of applicants that advanced passed the oral interview were African American. (Langford Affidavit, ¶ 11, J.A. 0004)

As a preliminary matter, the Court finds that the Defendant is correct that the email exchange is not relevant here, as there is no evidence before it that the recruitment officers participated as panelists in Plaintiff's interview or influenced Plaintiff's interview in any way. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) ("Ultimately, it is the perception of the *decisionmaker* which is relevant") (internal citation omitted) (emphasis supplied).

---

[4] Plaintiff also cites to a series of webpages and Facebook profiles which purportedly show that individuals outside of the protected class were hired for the position. (J.A. 0030-0043, 0058-0061). However, the Court finds that those materials are inadmissible hearsay documents. *See* Fed. R. Evid. 801. Therefore, the Court will not consider them in its analysis. *See Harvey v. Velasquez Contractor, Inc.* Civ. No. GLS 19-1573, 2020 WL 5628976, at *3 (D. Md. 2021) ("The law and Federal Rules of Civil Procedure make clear that evidence supporting the facts set forth by the Plaintiff to defeat a summary judgment challenge must be admissible at trial"); *see also DeWitt v. Clean Harbors Env't Servs., Inc.*, Civ. No. RDB 16-1705, 2017 WL 3116609, at *6 (D. Md. July 21, 2017) ("conclusory and hearsay evidence does not provide support sufficient to defeat a summary judgment motion").

Next, the Court finds that the Plaintiff fails to make a prima facie showing. In support of his racial discrimination claim, Plaintiff provides the following evidence: (1) Plaintiff's testimony that Mr. O'Malley was reluctant to shake his hand; (2) Plaintiff's testimony that Mr. O'Malley frowned when Plaintiff entered the room and frowned again when, during the interview, Plaintiff referred to police misconduct related to policing of the African American community; and (3) Plaintiff's testimony that both Ms. Holt and Mr. O'Malley took very few notes during his interview. (Macedo Dep. 67:18-68:6, J.A. 0082; Macedo Dep. 72:21-74:14, J.A. 0083-0084; Macedo Dep. 106:15-107:25, J.A. 0092). Upon review of this evidence, the Court finds that, even construing these facts in Plaintiff's favor, they are insufficient to support Plaintiff's claim of race discrimination. In essence, Plaintiff's claim is founded on speculation about discriminatory animus because of a handshake, Mr. O'Malley's facial expressions, and Mr. O'Malley and Ms. Holts' notetaking. A claim that fails to go beyond speculation or conjecture, however, cannot survive summary judgment. *See Bandy v. City of Salem, Va.*, 59 F.4th 705, 709-10, 712 (4th Cir. 2023) (dismissing where evidence presented by plaintiff "amount[ed] to little more than speculation"); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence"); *Tillery v. Piedmont Airlines, Inc.*, 713 F. App'x 181, 185 (4th Cir. 2017) (same); *cf. Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (declining to find that a "fully successful" performance review supports a Title VII cause of action because if it did that would mean that "Title VII would be triggered by supervisor criticism or *even facial expressions* indicating displeasure. Paranoia in the workplace would replace the prima facie case

as the basis for a Title VII cause of action"). Construing the facts in Plaintiff's favor, there is no reasonable inference that his application was rejected due to racial discrimination.

In sum, even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff fails to establish a prima facie case of race discrimination. Accordingly, the Motion is granted with respect to this claim.

**B.     ADEA Claim**

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To qualify for the ADEA's protections, an individual must be at least 40 years of age. 29 U.S.C. § 631(a). In the instant case, Plaintiff was 53 years old during the time at issue, so he qualified for the ADEA's protections.

When a plaintiff asserts an ADEA claim, the plaintiff must demonstrate that his or her age played a role in the employers decision-making process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Put another way, a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177 (2009); *see also* 29 U.S.C. § 623(a)(1) ("because of such an individual's age").

The three-stage *McDonnell-Douglas* framework that was developed for Title VII claims also applies to ADEA claims. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (applying *McDonnell-Douglas* framework to an ADEA discrimination claim). As such, a plaintiff bears the burden of establishing a prima facie case. To establish a prima facie case of age discrimination, a plaintiff must show: (1) he is at least 40 years of age; (2) he applied for a position;

(3) his application was rejected despite his qualifications; and (4) his application was rejected under circumstances that give rise to an inference of unlawful discrimination. *Guluma v. DeJoy*, Civ. No. DLB 20-3588, 2022 WL 1642261, at \*5 (D. Md. May 24, 2022).

Here, it is undisputed that Plaintiff was 53 years old at the time of the oral interview and that he applied for the police officer position. Also, as held above, the Court finds that Plaintiff was qualified for the police officer position. So, the first issue the Court must resolve is whether Plaintiff made a prima facie showing that Defendant's decision to not hire Plaintiff gives rise to an inference of unlawful discrimination related to Plaintiff's age.

Plaintiff cites to two relevant pieces of evidence in support of his ADEA claim: (1) all three interview panelists wrote his age on their Interview Sheets; and (2) Ms. Holt and Mr. O'Malley failed to "memorialize Plaintiff's eloquently extraordinary responses" because they wrote very few notes during his interview. (Interview Sheets, J.A. 002-0064; Macedo Dep. 105:15-21, J.A. 0092). The Defendant contends that this evidence is insufficient to establish a prima facie case because: (1) the Plaintiff provided his age during his interview, without being asked, and the panelists merely wrote down Plaintiff's response, which is not evidence of discrimination; and (2) Ms. Holt and Mr. O'Malley not taking many notes is not evidence of discrimination. (Macedo Dep. 31:17-33:2, J.A. 0073-0074).

According to Plaintiff, the fact that the panelists wrote his age at the top of their Interview Sheets is evidence of age discrimination because "other candidates were not so lucky for their [Interview Sheets] to memorialize their age." (Opposition, p. 9).[5] Defendant asserts, however, that

---

[5] Plaintiff seemingly asserts that the panelists writing his age at the top of their Interview Sheets is "direct evidence" of age discrimination. (Opposition, p. 6). The Court disagrees. Direct evidence of discrimination is evidence that can prove discriminatory intent and "for which no inference is required." *Handley v. Baltimore Police Dept.*, Civ. No. DLB 20-1054, 2022 WL 3700871, at \*9 (D. Md. Aug. 26, 2022) (quoting *Holley v. N.C. Dept. of Admin., N.C.*, 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012)).

Plaintiff provided no evidence to support this contention, which means that it is nothing more than unsupported conjecture that fails to substantiate Plaintiff's age discrimination claim. (Reply, p. 7).

Upon review of the record, the Court agrees with the Defendant. Nowhere in the record does the Plaintiff provide Interview Sheets related to other applicants. Put succinctly, the J.A. contains no facts related to Interview Sheets for other applications. Accordingly, Plaintiff's assertion is "mere suspicion." Plaintiff's suspicion, without some evidentiary support, does not support his age discrimination claim. *See Bandy*, 59 F. 4th at 709-10 (mere conjecture does not support discrimination claims); *Dash*, 731 F.3d at 311; *Tillery*, 713 F. App'x at 185; *see also Vaughn v. CA Techs., Inc.*, 169 F. Supp. 3d 833, 840 (E.D. Ill 2016) ("Although the court must draw inferences in [p]laintiff's favor as the nonmoving party, the [c]ourt may not "draw[ ] inferences that are *supported by only speculation or conjecture*.") (emphasis supplied) (citing *Brown v. Advocate S. Suburban Hosp*., 700 F.3d 1101, 1104 (7th Cir. 2012)).

This finding is also supported by the fact that Plaintiff specifically testified that he *volunteered* his age when responding to a question about his work and life experiences. (Macedo Dep. 31:17-33:2; Macedo Dep. 41:16-22, J.A. 0076). Thereafter, the panelists each wrote down Plaintiff's age in the notes section of the Interview Sheets related to that particular question. (*See* Interview Sheets, J.A. 0062-0064). Thus, even at this procedural juncture, the fact that the panelists wrote down Plaintiff's age does not give rise to an inference of unlawful discrimination.

The Court, then, must determine if Plaintiff's assertion that Ms. Holt and Mr. O'Malley failed to take notes to "memorialize Plaintiff's eloquently extraordinary responses," is enough, on its own, to give rise to an inference of unlawful discrimination on the basis of age. Even when viewing this piece of evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to make a prima facie showing of age discrimination. Simply put, it is an illogical inference

to conclude that solely because the panelists took few notes during Plaintiff's interview, the panelists discriminated against Plaintiff on the basis of his age. *See Farmer v. Secretary of Commerce*, 923 F. Supp. 770, 777 (D. Md. 1996) ("isolated and ambiguous" evidence is insufficient to establish prima facie case); *see also Barwick*, 736 F.2d at 958–59 (a "mere scintilla" of evidence is insufficient to overcome summary judgment).

Accordingly, the Court finds that Plaintiff failed to establish a prima facie case of age discrimination and the Motion with respect to this claim is granted.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant as to Counts I and II. The Clerk of the Court is further directed to **CLOSE** this case.

A separate Order will follow.

Dated:  June 21, 2023                                      _____/s/_____
                                                          The Honorable Gina L. Simms
                                                          United States Magistrate Judge